### In re SNIDER'S ESTATE.

#### APPEAL OF GILLS.

WILLS—MENTAL COMPETENCY—EVIDENCE—MEDICAL TESTIMONY.

> In will contest, verdict for contestant *held,* not against the great weight of the evidence, where, notwithstanding attorney who drafted it testified testatrix came to his office, told him what she wanted, he prepared the will in her presence and that she read and signed it, lay testimony is conflicting and doctor who attended her gave very positive testimony that she was mentally incompetent and raised issue of fact under the circumstances of the execution, the issue resolving itself into one of credibility of the witnesses.

Appeal from Wayne; Moll (Lester S.), J. Submitted April 17, 1936. (Docket No. 135, Calendar No. 38,749.) Decided June 4, 1936. Rehearing denied September 2, 1936.

The last will and testament of Lucy M. Snider, deceased, was presented for probate. Mary Calnon

filed objections thereto. Contest certified to circuit court. Verdict and judgment for contestant. Proponent Clem A. Gills appeals. Affirmed.

*Robert T. Speed,* for proponent.

*Aldred L. Meredith,* for contestant.

FEAD, J. In contest of the proposed will of Lucy M. Snider, a jury held the instrument invalid because of mental incapacity of testatrix to make it. The only question on this appeal is whether the verdict was against the great weight of the evidence.

Mrs. Snider, a widow, without issue, died July 3, 1934, at the age of 49 years, but prematurely old. Aside from household furniture and personal effects, she and her sister, contestant Mary E. Calnon, owned two pieces of property. On one a mortgage had been foreclosed and possession was about to be taken from them. The other was their home which had descended to them from their father and was worth about $6,000.

On part of the home lot was a store building, occupied for some years by proponent Gills as a tire and auto accessory shop. Gills had paid some attention to Mrs. Snider. In 1933 he was in default in his rent. Miss Calnon commenced summary proceedings and, in the course of the controversy, filed bill for partition. Mrs. Snider took Gills' part and his attorney appeared also for her. The possessory proceedings were dismissed for nonjoinder of parties plaintiff. Application for receiver was made in the partition suit but was not granted, the attorneys for the parties being authorized to collect the rents.

December 9, 1933, Mrs. Snider became seriously ill and was taken to a hospital, where she remained

until January 16th. The will was executed February 17, 1934. It gave $100 each to two religious institutions, $25 each to two friends, the foreclosed property and personal effects to Miss Calnon, and the home property to Miss Calnon and Gills in equal shares, reciting that the provision was made for Gills on account of his many courtesies and much aid. On February 20th, a codicil was executed, giving $100 to another religious institution.

The lay testimony of testatrix's mental condition was conflicting. In substance, it was that, after the beginning of her sickness, she was uncertain and unstable, flitting from one subject to another, unable to complete sentences because she forgot what she was talking about, melancholy, absent-minded, emotional, feeling that she had "lost her bearings," was depressed and, among other things, apparently did not know she had executed a will because she said she had signed papers authorizing her attorney to manage her property and was vexed that he had not done so. On the other hand, a large number of acquaintances said testatrix was mentally normal.

The professional testimony consisted of that of the lawyer, who drafted the will, and the doctor, who attended testatrix in the hospital. The lawyer said she came to his office, told him what she wanted, he dictated the will in her presence, she read and signed it. He said the religious institution covered in the codicil had been omitted from the will by inadvertence.

The doctor who treated her in the hospital for several weeks said she had an enlarged weak heart of gross irregularity, difficult breathing, general nervous breakdown, mental aberration or degeneration or weakening which comes as the result of premature aging on account of hardening of the

blood vessels, emotional instability, in conversation she would pass rapidly from laughter to tears and back, she had marked lack of comprehension and understanding, was depressive and hilarious and apathetic and irritable, with unmotivated action, not responsive to advice and encouragement, did not understand the simple things about her condition and was mentally incompetent. When she left the hospital her general condition was unsatisfactory, the only improvement being in the condition of her heart and that she had less trouble to get her breath.

The essential issue is whether, under *Spratt* v. *Spratt,* 76 Mich. 384, the will was executed under such circumstances as constituted it conclusive physical evidence of the mental competency of testatrix against which peculiar conduct and medical opinion have little or no evidentiary value. In the *Spratt Case* the lay and medical opinion of incompetency was uncertain and the fact firmly established that the testator had voluntarily and intelligently informed the scrivener of the details of his will.

The rule of the *Spratt Case* operates only on credible evidence and proper medical opinion of incompetency may raise an issue of fact as against a definite claim by the scrivener of competent dictation and execution of the will. *In re Lewandowski's Estate,* 236 Mich. 136; *In re Dwyer's Estate,* 251 Mich. 346.

The doctor was positive in his opinion, based upon personal observation and pertinent conditions, that testatrix was not mentally competent. The scrivener made the general statement that testatrix told him what she wanted in her will but he did not enter into details. He was Gills' attorney and had represented both him and testratrix in a proceeding

in which he became acquainted with testratix's property. He was named executor of the estate. Testatrix had made a former will which Gills had obtained from a safety deposit box on her order and which contained bequests to religious institutions. With the aid of Gills, or possibly without it, the scrivener could have drawn the will without any information from testatrix. In the partition suit he sought to have an office associate appointed receiver or obtain management of the property himself.

None of these facts is *per se* bad, nor do they necessarily impeach the will. But, with inferences which may be drawn from them and other testimony, they have such possibilities that we cannot hold there is such conclusive evidence of the mental capacity of testatrix, shown by the circumstances of the execution of the will, as to bar the jury from considering the testimony of the doctor and the lay witnesses who deny her competency. The issue resolved itself into one of credibility of witnesses, peculiarly a jury question. And while we might have reached a different conclusion than did the jury, we cannot say the verdict was against the great weight of the evidence.

Affirmed, with costs.

NORTH, C. J., and WIEST, BUTZEL, BUSHNELL, EDWARD M. SHARPE, and TOY, JJ., concurred. POTTER, J., took no part in this decision.